Norman **MERMELSTEIN** and Jules **Bernstein, Plaintiffs,**

v.

The **BANK OF NEW YORK COMPANY, INC., Defendants.**

No. CV 90–3400.

United States District Court, .E.D. New York.

Dec. 17, 1997.

Weiss & Yourman (Joseph H. Weiss, of counsel), New York City, for plaintiffs.

Sullivan & Cromwell (John L. Warden, Michael W. Martin, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

This is a class action brought pursuant to Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v. The class consists of all persons who purchased shares of common stock of the defendant Bank of New York Company, Inc. (Bank of New York) in reliance to their detriment on false and misleading statements in prospectuses issued by the bank in connection with its acquisition of the Irving Bank Corporation (Irving Bank).

The parties entered into a settlement agreement dated January 9, 1995 (the Agreement) in which Bank of New York agreed to offer for purchase by "Qualifying Class Members" discounted shares of Bank of New York stock. Plaintiffs have asked the court to confirm the Class Administrator's Claims Report calculating the claims of Qualifying Class Members eligible to buy discounted shares. The Bank of New York opposes the motion in part.

### I

On September 25, 1987 Bank of New York announced that it intended to make an offer for all outstanding shares of Irving Bank common stock. After the Bank of New York improved the offer, the Board of Directors of Irving Bank unanimously approved it on October 7, 1988.

On November 29, 1988 the Bank of New York accepted the Irving Bank shares tendered pursuant to the offer, acquiring other such shares on December 30, 1988 through a freeze-out merger. The Bank of New York shares exchanged for the Irving Bank shares pursuant to the offer were not issued or delivered until some time after November 29, 1988.

In connection with the acquisition Bank of New York issued prospectuses, one on March 19, 1988 and a supplement on November 14, 1988, as well as an information statement attached to its registration statement filed with the Securities Exchange Commission. In these acquisition documents Bank of New York made statements concerning its provisions for loan loss reserves.

On October 12, 1989 Bank of New York announced an addition of $600 million to its loan loss reserves and a resulting third quarter loss of $271.2 million. A little less than a year later, on October 3, 1990, this action was brought, alleging that in 1988 Bank of New York had made material and false statements in the acquisition documents as to its earnings, assets, and net worth, statements on which the persons who exchanged Irving Bank shares for Bank of New York shares had relied.

Discovery in the case ensued, and finally the parties agreed to settle and entered into the Agreement dated January 9, 1995, later amended on July 16, 1996. Under the terms of the Agreement the Bank of New York agreed to make available to "Qualifying Class Members" for purchase four shares of Bank of New York common stock at a 5% discount off market price for each five shares of Irving Bank Stock exchanged pursuant to the acquisition offer.

The Class Counsel has moved to confirm the Claims Report of the Class Administrator. The Bank of New York opposes the motion insofar as the report approves eight claims the Bank of New York says were made by persons who were not "Qualifying Class Members" and three claims filed late.

### II

The chief issue on the motion turns on the meaning of the language "Qualifying Class

Members." The Agreement defines those words to mean, so far as pertinent, "members of the Class" of Bank of New York shareholders "who (i) acquired the Securities in exchange for their [Irving Bank] shares in connection with the [Bank of New York–Irving Bank] Acquisition, [and] (ii) sold the Securities at a price below $34½ per share prior to January 15, 1992." Paragraph II. A.3.

The Class Administrator's Claims Report approved eight claims of persons who, sometime after November 29, 1988, received Bank of New York shares "in exchange" for their Irving Bank shares "in connection with" the acquisition, but did not sell those specific shares "before January 15, 1992". In 1988 before receiving those shares those claimants had sold "short" Bank of New York stock.

These claimants argue that they complied with the terms of the Agreement because they (i) acquired stock of the Bank of New York in the acquisition transaction and (ii) sold "their" Bank of New York stock at a price below $34½ a share before January 15, 1992. In other words, they say the short sales made before they received shares in the acquisition transaction constituted sales before January 15, 1992 of "the Securities."

To state the argument is to show its utter lack of merit. First, it misstates the literal language of the Agreement. The Agreement explicitly considers "the Securities" to be the shares of the Bank of New York acquired "pursuant to prospectuses" (Agreement paragraph, I.A.). Moreover, the definition of "Qualified Class Members" quoted above requires the Bank of New York shares that a member has sold prior to January 15, 1992 to be not any shares issued at any time by that bank, but "the Securities" "acquired" by the class members in the acquisition transaction.

It is incorrect and misleading for the claimants to say they sold "their" shares of Bank of New York stock. It was not "their" shares that were involved in the claimants' short sales. See 17 C.F.R. § 240.3b–3 (describing a short sale). In a short sale one does not sell shares one owns. One enters into agreement to sell shares owned by someone else and borrowed generally from a broker. To make a profit the short sellers expects later to buy shares on the market after the price has declined, and then to deliver those shares to the broker to replace the shares borrowed.

The interpretation of the Agreement urged by claimants is not only inconsistent with the wording of the Agreement but would defeat its basic purpose. The manifest end of the Agreement in making available to a claimant for purchase discounted shares of Bank of New York stock was to compensate a claimant who suffered a loss and was presumably misled to his detriment by the prospectuses. A short seller was not so misled. He expected the value of Bank of New York stock to go down.

When the short seller received Bank of New York shares in exchange for his Irving Bank stock, it would have made no sense for him to "cover" his short sale by forthwith delivering those shares to the broker. There would have been no profit in doing so if the "cover" was made promptly after issuance of the shares. The short seller had in effect bought those shares at the then the market value, a value he considered inflated.

But even if the short seller did "cover" at any time by delivering those shares to his broker, he would not have sold them. He would simply have complied with his agreement to return some shares to the broker. As Class Counsel admits, a "cover" is not a "sale".

The short seller could have made a profit if he had waited to "cover", bought shares of Bank of New York stock after the price declined but before January 15, 1992 when the price had recovered, and delivered to the broker the shares purchased at the lower price.

The Agreement was not designed to compensate a clever short seller who could make a profit from the decline in price. Its plain purpose was to compensate those who sold at a loss shares obtained in the bank acquisition transaction. If they sold after January 15, 1992, the date after which the Bank of New York stock consistently sold in excess of $34½ a share, they would not have had a loss and would not be a "Qualifying" class member.

## III

Bank of New York also objects to the allowances of another three claims, numbers 10,024, 10,026, and 10,029. The proofs of claim for these claims were postmarked after November 5, 1996, the date fixed in the court's amended order for notice and hearing. The reason given for the Class Administrator's recommendation that the court accept these claims was that the beneficial owners of the shares did not get notice until after November 5, 1996. In its discretion the court will allow the three claims. See *In re Crazy Eddie Securities Litigation*, 906 F.Supp. 840, 846 (E.D.N.Y.1995).

## IV

The motion of Class Counsel to confirm the claims report is denied as to claims 649, 700, 764, 768, 769, 864, 1067, and 10,006, on the ground that these claims were not made by "Qualifying Class Members". The claims report is otherwise approved.

So ordered.