### In re CENDANT CORPORATION PRIDES LITIGATION.

### No. CIV. 98–2819(WHW).

United States District Court,
D. New Jersey.

Sept. 21, 1999.

Roger W. Kirby, Kirby McInerney & Squire LLP, New York City, Lead Counsel for the Prides Class.

Carl Greenberg, Michael Rosenbaum, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, Samuel Kadet, Skadden, Arps, Slate Meagher & Flom LLP, New York City, for Cendant Corporation and Cendant Capital I.

Lisa Cohen, Schindler Cohen & Hochman LLP, New York City, for AEGON USA.

Jonathan D. Thier, Cahill Gordon & Reindel, New York City, for Schroder & Co.

## OPINION

WALLS, District Judge.

Defendants Cendant Corporation and Cendant Capital I ("Cendant") move for an Order Disallowing Proofs of Claim made pursuant to paragraph II(B)(6) of the Stipulation and Agreement of Compromise and Settlement ("Stipulation") dated March 17, 1999 and the corresponding Order Regarding Proposed Class Action Settlement, Settlement Hearing and Notice of Proposed Settlement dated March 17, 1999 ("March 17 Order") approved by the Court's Order and Judgment dated June 15, 1999 ("June 15 Order"). Lead Counsel for plaintiffs, Roger W. Kirby, of Kirby, McInerney & Squire, LLP, opposes the motion and cross-moves for the enlargement of time to file or cure claims pursuant to Federal Rule of Civil Procedure 6(b)(2). Having heard oral argument, the Court denies Cendant's motion and grants the cross motion of plaintiffs.

### Factual Background [1]

The instant dispute stems from a settlement first announced by the parties on January 7, 1999. On March 17, 1999, a proposed settlement agreement between Cendant and the class of persons who purchased Income or Growth Prides [2] during the period February 24, 1998 through April 15, 1998 was presented to the Court. The Prides Settlement was approved by June 15, 1999 Order. Cendant agreed to distribute one Right, with a theoretical value of $11.71, for each Prides owned as of the close of business on April 15, 1998. *See* Stipulation ¶¶ 1-5; *see also In re Cendant Corp. Prides Litig.,* 51 F.Supp.2d at 539-40. Cendant will then issue two New Income Prides or two New Growth Prides to any person who delivers to Cendant three Rights, together with existing Income or Growth Prides, respectively, before the expiration, the close of business on February 14, 2001, unless the Prides are amended. *See id.*

To collect the Rights, each Prides owner was required to submit a valid Proof of Claim form by June 18, 1999. *See* March 17 Order ¶ 4. Under the terms of the March 17 Order, a settlement administrator, Valley Forge Administrative Services, was to verify the proofs of claim. If a claim was rejected by the administrator, each claimant was given twenty days after the administrator mailed a request to cure to resolve its claim. *Id.* at ¶ 4(h).

On September 7, 1999, Cendant filed a motion to disallow proofs of claim and requests that the Court uphold the "unambiguous, mandatory deadline by which proofs of claim must be filed [and the] equally unam-

---

1. *In re Cendant Corporation Litigation,* 182 F.R.D. 144 (D.N.J.1998), and *In re Cendant Corporation Prides Litigation,* 51 F.Supp.2d 537 (D.N.J.1999), provide a full factual and procedural history of this litigation.

2. Each of the Income Prides consists of a unit comprised of a Purchase Contract under which the holder would purchase from Cendant on February 16, 2001 a specified number of newly issued shares of Cendant common stock for $50 (the "Stated Amount") in cash. Cendant agreed to pay the holders of Income Prides "Contract Adjustment Payments" at the rate of 5% of the Stated Amount per year, an interest in Trust Preferred Securities paying 6.45% of the Stated Amount per year, and $50 at maturity. Each of the Growth Prides consists of a unit comprised of a Purchase Contract under which the holder would purchase from Cendant on February 16, 2001 a specified number of newly issued shares of Cendant common stock for the Stated Amount in cash. Cendant agreed to pay the holders of Growth Prides "Contract Adjustment Payments" at the rate of 5% of the Stated Amount per year and a 1/20th undivided beneficial interest in a treasury security having a principal amount of $1000 and maturing in 2001. *See In re Cendant Corp. Prides Litig.,* 51 F.Supp.2d at 539-40.

biguous, mandatory deadline for filing a response to any request to cure a proof of claim." Cendant Brf. at 2. Cendant asserts that the administrator "has determined to accept claims that were filed late; to accept claims that were initially filed on time but were not corrected (or 'cured') in a timely manner; and to accept claims that have not been supported by the required documentation." *Id.* at 4. Cendant objects to fifty-four claims filed after the June 18 deadline, one hundred and forty-one claims accepted by the administrator after the twenty-day time-to-cure period had expired, and twelve claims which Cendant says are supported by insufficient documentation. *Id.* at 12; Greenberg Aff. ¶¶ 5–11.

Lead Counsel, in response, has submitted a brief on behalf of class members whose claims are being disputed generally, and in particular on behalf of certain Merrill Lynch customers, Schroder & Co., and AEGON USA. He asks the Court to extend the time for filing proofs of claim and the time to respond to the administrator's requests. Lead Counsel asserts that the Court has the power to extend the time because (1) it has the inherent discretion in equity to protect class members and (2) Fed.R.Civ.P. 6(b)(2) allows the Court to enlarge the time to respond upon a showing of "excusable neglect." Lead Counsel's ("LC") Brf. at 17–23. Lead Counsel urges the allowance of the late-filed claims and the AEGON, Schroder and Merrill Lynch client claims. *Id.* at 14–17.

### Analysis

#### A. The Court's Power to Modify the Stipulation and Related Orders

##### 1. The Equitable Power of the Court

As noted by Lead Counsel, there are two sources of the Court's ability to modify the deadlines in the Stipulation, and the March 17 and June 15 Orders: (1) the Court's general equitable power to define the scope of class action judgments and settlements; and (2) Federal Rule of Civil Procedure 6(b)(2), which permits the Court to enlarge the time to respond to courtordered deadlines.

■ The Court has general equitable power to modify the terms of a class action

settlement. "Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers ... to protect unnamed, but interested persons." *Zients v. LaMorte,* 459 F.2d 628, 630 (2d Cir.1972). A Court may assert this power to allow late-filed proofs of claim and late-cured proofs of claim. *See id.; see also In re Agent Orange Product Liability Litig.,* 689 F.Supp. 1250, 1263 (E.D.N.Y.1988); *The Manual For Complex Litig.* § 30.47 at 248 (3d ed.1995) ("Adequate time should be allowed for late claims before any refund or other disposition of settlement fund occurs.").

Courts which have considered requests to extend deadlines for filing proofs of claim and other settlement documents have generally subjected each request to a general "good cause" analysis. *See Kyriazi v. Western Elec. Co.,* 647 F.2d 388, 396 (3d Cir.1981) (affirming trial court's application of a good cause standard to claims of plaintiffs who failed to opt-in to settlement by deadline); *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1128 (9th Cir.1977) (affirming district judge's decision that he "would have discretion to permit a claim and allow a late claim when there's good and sufficient cause shown therefor"); *see also Grace v. City of Detroit,* 145 F.R.D. 413, 414–15 (E.D.Mich.1992) ("The adoption of the good cause standard [to a decision to accept untimely claim forms] is 'an appropriate exercise of the trial court's discretion in defining the scope of the class action judgment and settlement."); *In re ML–Lee Acquisition Fund II,* No. CIV.A. 92–60, 1999 WL 184135, at *2 (D.Del. March 23, 1999) (following *Grace v. City of Detroit*).

■ In the alternative, Courts have treated requests to accept late-filed or late-cured proofs of claim as motions to extend the time to comply with a court-ordered deadline. Federal Rule of Civil Procedure 6(b)(2) provides that "when ... by order of court an act is required ... the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." A court-ordered deadline for filing proofs of claim, then, may be subject to enlargement under Rule 6(b)(2) if the movant

can demonstrate that the delay was caused by "excusable neglect." *See In re Crazy Eddie Sec. Litig.*, 906 F.Supp. 840, 844–45 (E.D.N.Y.1995); *see also Supermarkets General Corp. v. Grinnell Corp.*, 490 F.2d 1183, 1185 (applying excusable neglect analysis to claimant's untimely filing of a request to opt out of settlement); *Mermelstein v. Bank of New York*, 985 F.Supp. 320, 323 (following *In re Crazy Eddie* and allowing three late proofs of claim); *Valente v. Pepsico, Inc.*, 89 F.R.D. 352, 363 (D.Del.1981) (reviewing late claims "to determine whether any claims filed after May 15 should be allowed because the tardiness was the result of excusable neglect"); *Georgine v. Amchem Prod., Inc.*, No. 93–0215, 1995 WL 251402, at *3 (applying excusable neglect standard to a request for an extension of time to opt out of a class action).

The Court finds that the appropriate standard under which any request to allow tardy proofs of claim or requests to cure should be analyzed is the excusable neglect standard of Rule 6(b)(2). While the "good cause" and the "excusable neglect" standards are both equitable in nature and may, at times, require similar analyses,[3] Rule 6(b)(2) addresses the present situation. Lead Counsel has requested an enlargement of the June 18 deadline that the Court set in paragraph 4(a) of the March 17 Order.

The Supreme Court has decreed that the determination of whether one party's neglect to adhere to a deadline is excusable should take into account all relevant circumstances surrounding the delay. *See Pioneer Invest. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Relevant factors include "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489. To this roster, the Third Circuit has added "(1) whether the inadver-

tence reflected professional incompetence such as ignorance of the rules of procedure, (2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, and, (3) a complete lack of diligence." *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir.1988).

## B. Analysis of Claims

### 1. Prejudice to Cendant from the Delay

■ Where a delay in adhering to a court-ordered deadline is not long and causes little prejudice to the opposing party, a court may opt to excuse the lateness. 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1165 (2d ed.1999).

Cendant argues that because the Stipulation and the related orders have the force of a binding contract, the company will be irretrievably prejudiced if it is deprived of bargained-for rights contained in these documents. The company asserts that these documents contain clear and mandatory deadlines and requirements for submitting (and curing) proofs of claim. Cendant Brf. at 22–24. Lead Counsel counters that the parties did not negotiate the June 18, 1999 deadline for filing proofs of claim; it was a court-chosen date. LC Brf. at 7 ("That the [C]ourt selected that date and inserted in into its own order was mere happenstance and establishes that the parties had no contractual expectations regarding 'June 18, 1999.' ").

■ The Court should generally refrain from extending the offer and cure periods in a settlement agreement where the change "modifies the understanding negotiated between Plaintiffs and Defendants." *See In re ML–Lee Acquisition Fund II*, No. CIV.A. 92–60, 1999 WL 184135, at * 2 (D.Del. March 23, 1999). Here, however, any extension of the June 18, 1999 deadline for filing proofs of claim would not change the bargained-for terms of the Stipulation. *See generally In re*

---

**3.** *Crazy Eddie* states that the good cause standard is more stringent than the excusable neglect standard. *See* 906 F.Supp. at 844. *Supermarkets General Corp.*, however, found that the court's general equitable power to supervise and modify

class action settlements encompassed the excusable neglect standard of Rule 6. *See* 490 F.2d at 1185. Lead Counsel also takes the position that excusable neglect is a "subset" of good cause. LC Brf. at 18.

*Crazy Eddie Securities Litig.,* 906 F.Supp. 840, 844.

■ The *Crazy Eddie* court, for example, rejected defendant's argument that the court-ordered deadline for submitting claim forms was "an integral part of the bargain" because (1) the Proof of Claim "simply contain[ed] a blank where the date should be inserted"; (2) the judge who entered the settlement order determined the deadline; (3) under the terms of the settlement, the claimants were given time to cure deficient claims; and (4) the settlement allowed the court to review rejected claims. *See* 906 F.Supp. at 844. A similar situation is present here. Like the *Crazy Eddie* settlement deadline, the June 18 deadline was left blank in the March 17 Order and was set by the Court. Further, the Cendant settlement allows claimants time to cure and permits the Court to review the claims. *See* March 17 Order ¶ 4(j). The Court, therefore, cannot conclude that the June 18 deadline was an essential part of Cendant's bargain. It follows that Cendant will not be prejudiced by failing to receive its benefit of the bargain if the Court extends the deadline for filing proofs of claim.

Further, the terms of the Stipulation and the related Orders indicate that both parties recognized that the schedule for the settlement's distribution was uncertain.[4] For example, when the settlement papers were submitted to the Court, the initial deadline for filing proofs of claim was left open, and the date for distribution of the Rights and Effective Date were also unspecified. *See Crazy Eddie,* 906 F.Supp. at 844–45 (recognizing that the lack of set dates in the stipulation between the parties anticipated the need for flexibility). Additionally, because both Cendant and Lead Counsel have moved quickly to resolve this issue, there has not been a substantial lapse of time from the June 18, 1999 deadline to this Decision.

Moreover, the Court rejects defendant's argument that it will be unreasonably prejudiced by the allowance of late claims because "this settlement is essentially a 'claims made'

settlement, where a fixed or maximum amount of consideration *per PRIDES* is distributed only to class members who submit valid and timely proofs of claim." Cendant Brf. at 7. Unlike other large class action "claims made" settlements where the Defendant's immediate financial situation, such as cash flow, is affected if late claims are permitted, under this settlement, Cendant's ultimate obligation to the Rightsholders will not accrue until 2001. *See In re Cendant Corp. Prides Litig.,* 51 F.Supp.2d 537, 539–40 (D.N.J.1999) (setting out settlement structure). The time obligation remains the same as before with the original issue. Prides securities are being exchanged for securities-as the Court observed during oral argument, "paper for paper." Because of this, the Court finds that Cendant has not shown how the allowance of late claims will presently impact the company's financial "bottom line."

Importantly, the Court finds that Cendant will not be harmed by an enlargement of the deadlines contained in the settlement documents because the original limits of Cendant's bargained-for financial obligations, $341,480,861, have not been expanded. Nor has the potential number of issued rights, 27,161,474, increased.

### 2. Impact on Judicial Proceedings

The court recognizes that "a cutoff date is essential and at some point the matter must be terminated." *Crazy Eddie,* 906 F.Supp. at 845 (quoting *In re Gypsum,* 565 F.2d at 1127); *see also Jaroslawicz v. Engelhard Corp.,* No. 84–3641, 1991 WL 117416, at *2 (D.N.J. June 21, 1991). The Court concludes, however, that a slight enlargement of the time to file proofs of claim and responses to requests to cure will not unreasonably hamper proceedings before the Court.

### 3. The Reasons For the Delay

■ After examining the potential prejudice to the nonmovant and the delay's effect upon the judicial proceedings, the Court

---

4. During the October 6, 1999 hearing, the Court rejected defendant's argument that "time was of the essence" conditioned this settlement; there

having been no express, direct or implied reference to it in the agreement.

must examine the claimants' reasons for delay to determine whether their neglect to follow the filing deadlines is excusable. Excusable neglect "is a somewhat elastic concept." *Pioneer*, 507 U.S. at 391, 113 S.Ct. 1489. The neglect may encompass "inadvertent delays" and "is not limited strictly to omissions by circumstances beyond the control of the movant." *Id.* at 391–92, 113 S.Ct. 1489.

### a. Letters Sent to the Court

As of September 20, 1999, the Court had received one hundred twenty-three letters sent by claimants who either failed to file a timely initial proof of claim or · did not respond to a request to cure within 20 days.[5] Of these, one hundred two letters were sent by individuals, another eight were sent by individuals who represented that they used Merrill Lynch as their broker, ten were sent on Merrill Lynch letterhead on behalf of various individuals, and three were sent by institutional or large investors.

A sampling of the letters from the first category of claimants, the individual investors, reveals various reasons for delay: "I did not receive any letter or any notice or form about this litigation" (Craven, # 8471, Late Claim); "I had returned from my business travel to find my Mother in very serious condition" (sent with claimant's mother's death certificate) (McKague, # 1250, Late Cure); "We live in a motorhome and spent the summer in Canada and Alaska [and] our mail is [handled] by a forwarding service" (Parker, # 1651, Late Cure); "I have two homes, one in Florida ... and one in New Hampshire, where I spend the spring and summer months. Your letter was sent to Florida and then forwarded by the Post Office to New Hampshire" (Sedlymayr, # 383, Late Cure); "The letter requesting the additional proof of ownership was held by my wife who filed for divorce during this time period and had a restraining order on me and withheld all my mail" (Turci, # 381, Late Cure); "Now I've received a letter saying my

letter was delivered late and I need to explain why it was late. The answer is simple: I am currently living in the People's Republic of China . . . . all my incoming mail has to go first to Alaska, then be forwarded to Texas where my employer will consolidate the mail for overseas employees" (Anderson, # 2743, Late Cure); "The reason you were late in receiving a response was the death of my wife's mother, in Pennsylvania, due to Alzheimer's disease. I remained in Pennsylvania for some time to help care for my 90 year old father-in-law. When I returned, the notification was in my mail that was being held at the post office." (Higgins, # 1615, Late Cure).

The second group of letter-writing claimants are those whose claims were handled by Merrill Lynch. *See, e.g.*, Kirby Aff. Ex. E. According to Lead Counsel, these claims were delayed because Merrill Lynch personnel failed to provide various claimants with necessary support for their claims. *See* Letter from Lawrence H. Wall for Randolph Wall (# 200) (on Merrill Lynch letterhead) ("The only reason for late filing was the delay by Merrill Lynch in getting us the necessary statement copies."); Letter from Paul Durham (# 3899) ("I forwarded the cure notice to Merrill Lynch requesting that they provide you with this information on my behalf").

The final group of claimants whose letters the Court received are the larger investors. The first large investor, Schroder & Co. (# 8505), a holder of 41,200 Prides, submitted a valid proof of claim but failed to file it until July 21, 1999. In its defense, the company states that Lewco, the company which maintained the securities, "possessed incomplete address information for Schroder's Convertible Securities desk and therefore no proof of claim had been mailed to Schroder earlier." LC Brf. at 15. Another large investor, AEGON USA, a holder of 70,800 Prides, asserts that its claim was rejected by the administrator despite the fact that it complied with the timetable.[6] The administrator has since ac-

---

5. The Court recognizes that the letters it received do not constitute a complete set of the objectionable claims. *See* Greenberg Aff. Ex. K.

6. Cendant objects to the AEGON claim on the grounds that it was accepted by the settlement administrator even though, according to Cendant, AEGON provided insufficient documenta-

cepted AEGON's claim. By letter, the State of Tennessee Employees Retirement System (#8432), a substantial holder of 200,000 Prides presumably on behalf of thousands of state employees, also seeks acceptance of its claim.

After a review of these letters and the various exhibits submitted by Lead Counsel, the Court finds that, in the aggregate, the claimants' neglect to strictly adhere to the deadlines for filing proofs of claim and/or responding to requests to cure is excusable. The Court will enlarge the deadline for the filing of proofs and the time period in which invalid proofs may be cured. By this Decision, Cendant will not have to pay more than its bargained-for maximum exposure of $341,480,861. By the Settlement, Cendant knew and acknowledged its obligations to the holder of 27,161,474 Rights. No meritorious reason has been advanced to reduce Cendant's obligation during the three months that have elapsed since the June 15 Order.

## C. Time Permitted to File

### 1. Proof of Claim Forms and Responses to Requests for Cure

Lead Counsel asserts that September 3, 1999 was "the last date for Cendant efficiently to shape its objections." *See* LC Brf. at 4; *see also* LC Brf. Appendix (setting out timetable for reaching Effective Date of Settlement). And, "so long as claims have been cured by at least September 3, 1999, neither Cendant nor any other class member is prejudiced in respect of what either did obtain by the bargain—swift distribution of the Rights and finality." LC Brf. at 2. Based on the foregoing analysis and allowing for the Labor Day holiday, the Court will extend the deadline for submitting proofs of claim from June 18, 1999 to September 7, 1999. The Court will also extend the last date for submission of papers in response to a request to cure from August 17, 1999 (the latest possible date for submission under the Court's previous Order) to September 7, 1999. This does not mean, however, that all claims filed before this date will be accepted by the Court without question. The Court must still ex-

amine each "late" claim or cure filed before September 7th to determine if delay was caused by "excusable neglect."

As an analysis of all disputed claims is necessary, Lead Counsel is directed to furnish the Court with the reasons advanced by each late claimant by October 20, 1999. This deadline may be expanded if the parties agree to attempt to narrow the list of disputed claims.

## D. Unsupported Claims

The remaining issue to be resolved is whether the administrator's decision to accept claims which, according to Cendant, are unsupported by proper documentation should be accepted by the Court. Cendant argues that the burden is on claimants to show that they are "Authorized Claimants" who beneficially held Prides as of April 15, 1998. For support, the corporation relies upon the Proof of Claim form which required a signed statement that the claimant owned Prides as of April 15, 1998 and mandated that the claimant submit either monthly brokerage reports or business records to confirm such ownership. Lead Counsel counters "that reason, not hypertechnicality, was meant to determine whether adequate supporting documentation had been supplied." LC Brf. at 12. He argues that Section II.B.5 of the Stipulation between the parties gave discretion to the Administrator to determine whether adequate documentation was supplied. This section states that "[T]he verification of each Proof of Claim shall be undertaken by the Settlement Administrator .... [who] shall undertake whatever investigation it deems reasonable or necessary to verify, to the extent reasonably possible, the accuracy, completeness and validity of the Proof of Claim."

Regardless of whether the Settlement Administrator was given reasonable discretion to accept claims, this discretion is limited by the terms of the Stipulation and the Proof of Claim form, which require certain documents to verify claims. Such terms also give Cendant the right of review and objection to the

---

tion in support of its claim. AEGON's claim is included with the other claims Cendant objects

to because of insufficient documentation. *See infra* p. 327.

administrator's decisions before this Court. *See* Stipulation ¶ 6; March 17 Order ¶ 4(f) ("Cendant shall have the right to review all Proofs of Claim, all Requests to Cure, all responses to Requests to Cure, and any and all documents relating thereto."). As stated, however, the Court retains the equitable power to oversee the settlement, including the claims rejection process, and may extend the time for claimants to cure.

The Court will not accept any claim unless it is satisfied that each claimant is truly a member of the settlement class. Lead Counsel is invited to submit additional information provided by these claimants to support their disputed claims if such information was sent before the cut-off date of September 7, 1999. The Court will examine these claims for validity at the time it conducts its "excusable neglect" analysis of late claims.

### Conclusion

For the above reasons, the Court extends the deadline for submitting proofs of claim from June 18, 1999 to September 7, 1999. The Court also extends the last date for submission of papers in response to a request to cure from August 17, 1999 (the latest possible date for submission under the Court's previous Order) to September 7, 1999. Upon submission of the required supporting papers from Lead Counsel, the Court will make a final decision about each of the disputed claims in this settlement.

### ORDER

This matter is before the Court on the motion of defendants Cendant Corporation and Cendant Capital I ("Cendant") for an Order Disallowing Proofs of Claim and plaintiffs' cross-motion for the enlargement of time to file or cure claims pursuant to Federal Rule of Civil Procedure 6(b)(2). Having heard oral argument, examined the parties' submissions, and for good cause shown,

It is on this day of October, 1999,

ORDERED that Cendant's motion is denied; and

ORDERED that plaintiffs' motion is granted; it is further

ORDERED that Lead Counsel for plaintiffs, Roger W. Kirby, of Kirby, McInerney & Squire, LLP, submit additional documentation to this Court consistent with the corresponding Opinion.