

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-1-2000

# In Re: Cendant Corp Prides Litigation

Precedential or Non-Precedential:

Docket 00-1822

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"In Re: Cendant Corp Prides Litigation" (2000). *2000 Decisions.* Paper 242.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/242

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1822

IN RE: CENDANT CORPORATION PRIDES LITIGA TION

WELCH & FORBES, INC., an institutional investment
manager, individually and on behalf of all others similarly
situated

v.

CENDANT CORPORATION; MERRILL LYNCH & CO.;
CHASE SECURITIES, INC.; HENRY R. SILVERMAN;
WALTER A. FORBES; COSMO CORIGLIANO

       CHASE MANHATTAN BANK, as
       custodian for Capital Income Builder,
       Inc.; INCOME FUND OF AMERICA,
       INC.; CAPITAL WORLD GROWTH AND
       INCOME, INC.,
       (Pursuant to Rule 12(a), F.R.A.P.)
       Appellants

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 98-cv-02819)
District Judge: Honorable William H. W alls

Argued: October 25, 2000

Before: BECKER, Chief Judge, MANSMANN and
FUENTES, Circuit Judges.

(Filed: December 1, 2000)

Gerald T. Ford, Esquire (Ar gued)
Landman, Corsi, Ballaine & Ford
One Gateway Center
Suite 400
Newark, NJ 07102

 Counsel for Appellants

Michael M. Rosenbaum, Esquire
 (Argued)
Carl Greenberg, Esquire
Budd, Larner, Gross, Rosenbaum,
 Greenberg & Sade
150 John F. Kennedy Parkway
CN 1000
Short Hills, NJ 07078-0999

 Counsel for Appellee Cendant
 Corporation

Roger W. Kirby, Esq.
Kirby, McInerney & Squire
830 Third Avenue
10th Floor
New York, NY 10022

 Counsel for Appellee Welsch &
 Forbes, Inc.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Chase Manhattan Bank appeals the District Court's denial of its Fed. R. Civ. P. 60(b) motion for reconsideration of the final judgment excluding Chase from the settlement of a securities fraud action that investors br ought against Cendant. Chase's portion of the settlement fund, which would have exceeded $23 million, reverts to Cendant under the terms of the settlement Stipulation. Specifically, Chase claims alternatively, either that its handling of its claims did not constitute neglect on its part, or that the District Court erred in failing to apply correctly the standards for

determining "excusable neglect" in denying Chase's proof of claim.[1]

Cendant counters Chase's appeal on numerous gr ounds, only one of which we need consider in this appeal, the other claims having been resolved against Cendant in our opinion in a related case, In re Cendant Corporation Prides Litigation, No. 00-5199, slip op. (3d Cir . Nov. ___, 2000).[2] Cendant's sole remaining counter-ar gument is that the District Court properly denied Chase the ability to participate in the settlement because Chase failed to demonstrate "excusable neglect." Because the facts before us are incomplete, and because the District Court did not make clear its reasoning and application of the"excusable neglect" factors, we find that we do not have a sufficient basis to review the District Court's ruling for abuse of discretion. See Gunter v. Ridgewood Ener gy, 223 F.3d 190

_____

1. We need not reach Chase's arguments regarding its motion to extend the time for filing an appeal. The District Court disallowed Chase's claims by an order dated January 14, 2000, and this order was certified as appealable on February 22, 2000. Chase missed the thirty day period for filing an appeal from this decision, but later filed a motion asking the District Court to extend the time for filing an appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5). The District Court denied the motion and Chase appeals. Even if we were to rule in Chase's favor on this score, however, the most that we could possibly do is consider the record that was before the District Court on January 14, 2000. See United States v. Gilchrist, 215 F.3d 333, 339 (3d Cir. 2000) ("An argument not raised in the district court is not properly pr esented for appellate review."). Because Chase had provided no excuse for its late cures as of that date, we would be compelled (on that recor d) to affirm the District Court's disallowance of Chase's claims.

In light of our disposition, we also need not consider Chase's argument that the short cure period and the allegedly inadequate notice of the need to submit excuses to preserve claims worked a due process violation in this case. Finally, we decline to consider Chase's argument that its initial proofs of claim were valid.

2. In 00-5199, we concluded that the District Court had retained the discretion to allow late-filed and late-cur ed claims. Equally applicable here (though that case involved Fed. R. Civ. P . 6(b)(2) and this case involves Fed. R. Civ. P. 60(b)) is our second conclusion in 00-5199 that the appropriate standard under which to evaluate requests to allow tardy proofs of claim or cures is "excusable neglect."

3

(3d Cir. 2000). We will, therefor e, vacate the District Court's decision and remand this case to the District Court with directions to undertake a more thor ough determination, with requisite factualfindings, of whether the circumstances support Chase's claims of"excusable neglect."

Because related litigation is already the subject of at least three published opinions, each exhaustively setting forth the procedural and factual background, we will not do so here, but instead refer interested parties to these prior dispositions.3 We set forth only those facts crucial to a resolution of the dispute here.

I.

This appeal is one of several which arise out of the large securities fraud class action (Cendant PRIDES litigation) involving Cendant and its former officers. In June 1999, the District Court approved a $340 million settlement of the Cendant PRIDES class action litigation. Under the terms of the Stipulation of Agreement of Settlement and Compromise (the "Stipulation"), Cendant agreed to distribute one Right, with a theoretical value of $11.71, for each PRIDES owned as of the close of business on April 15, 1998. See also In re Cendant Corp. Prides Litig., 51 F. Supp. 2d at 539–40. To collect the Rights, each PRIDES owner was required to submit a valid proof of claim by June 18, 1999. The proofs of claim could take the for m of "monthly brokerage account statements," or if PRIDES were not held in brokerage accounts, the form of "business records maintained in the ordinary course of business." Under the terms of the Settlement Hearing Order , a settlement administrator, Valley Forge Administrative Services, was to verify the proofs of claim. The Rights, which are publicly traded, expire on February 14, 2001, when, in combination

_____

3. In re Cendant Corp. Litig., 182F.R.D. 144 (D.N.J. 1998), In re Cendant Corp. Prides Litig., 51 F. Supp. 2d 537 (D.N.J. 1999), and In re Cendant Corp. Prides Litig., 189 F.R.D. 321 (D.N.J. 1999), provide a full factual and procedural history of this litigation.

with the current PRIDES, they will be exchanged for new PRIDES.4

Chase is custodian for three mutual funds in which it held PRIDES: Capital Income Builder, Inc. ("CIB"), Income Fund of America ("IFA"), and Capital and World Growth and Income, Inc. ("World Growth"). As of April 15, 1998, Chase held 400,000 PRIDES for CIB, with a settlement value of $4,684,000; 1,400,000 PRIDES for IFA, with a settlement value of $16,394,000; and 220,000 PRIDES for W orld Growth, with a settlement value of $2,576,200; with a total of $23,654,200 for all three funds. Pursuant to the terms of the Stipulation, Chase submitted three timely proofs of claim to participate in that settlement. For two of the claims, IFA and World Growth, the administrator requested of Chase additional documentation, that is, the administrator sent a Request to Cure. Chase supplied the additional information, and though it was apparently sent four days late, the administrator approved the IFA and World Growth claims.

Cendant moved to disallow Chase's claims and those of other class members because of various minor filing delays. Chase alleges that neither Cendant, the PRIDES Class, nor the District Court, notified it of either that motion or the resulting Court ruling that claimants had to submit an excuse for any delay in order to preserve a claim.5 That is why, maintains Chase, it did not submit an excuse. As a result, the District Court, on January 14, 2000, denied Chase's claims. On February 23, 2000, the District Court certified its January order as final and appealable. As to

_____

4. Cendant agreed to issue two New Income Prides or two New Growth Prides to any person who delivered to Cendant three Rights, together with existing Income or Growth Prides, r espectively, before the expiration
of the close of business on February 14, 2001, unless the Prides are amended. Id. Because time is short, the District Court should expedite its consideration of this case. We also dir ect the Clerk of this Court that
any further appeals should be assigned to this panel.

5. To support its allegation that alter natively Cendant, the PRIDES Class, and the District Court at various points failed to send it crucial notices, Chase asserts that other class members wer e similarly neglected, and consequently, failed to comply with r equests or to meet deadlines.

5

the CIB claim, though the administrator asserts that it sent a Request to Cure, Chase claims that the letter was never received. The administrator denied that claim for failure to cure.

Chase insists that it first learned of these dispositions in April of 2000, and on April 24, 2000, filed a motion under Fed. R. Civ. P. Rule 60(b) to vacate the denial of its claims and to extend the time to appeal under Rule 4(a)(5). On June 8, 2000, the District Court denied Chase's motion, though as Chase notes, the District Court found that permitting late-curing claimants to participate in the settlement would not prejudice Cendant.6

II.

Chase challenges the District Court's denial of its 60(b) motion to permit it to participate in the underlying settlement. Specifically, Chase asserts on appeal that the District Court erred in refusing to excuse Chase's delays in providing excuses for earlier minor filing delays due to lack of notice and the District Court failed to apply pr operly the standards for determining "excusable neglect" outlined in Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Ptrshp , 507 U.S. 380 (1993). The District Court, maintains Chase, erroneously applied to Chase's IFA, W orld Growth, and CIB funds, the presumption that Chase received various notices, when the funds had not. Chase insists that had the District Court properly applied the law it would have excused the delay and permitted Chase to participate in the settlement, based upon the following factors, among others: lack of prejudice to Cendant; the inconsequential four-day delay as to IFA and World Growth; Chase's timely filing of its 60(b) motion; the delay's lack of impact on the judicial proceedings; class notices which were confusing or not received, and Chase's unchallenged good faith in handling the claims of all three funds.

We review the District Court's denial of the 60(b) motion for abuse of discretion.7 In re: O'Brien Envntl. Energy, 188

_____

6. See infra note 8.
7. The analysis in this case parallels that in a related case, In re Cendant
Corporation Prides Litigation, No. 00-5198, slip op. (3d Cir. Nov. ___, 2000). For purposes of clarity, pertinent portions of 00-5198 are repeated here.

6

F.3d 116, 122 (3d Cir. 1999). W e have held as to abuse of discretion, generally, that "an abuse of discretion arises when the [D]istrict [C]ourt's decision r ests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Oddi v. Ford Motor Co., 2000 WL 1517673, at *7 (3d Cir. 2000) (citation omitted). An abuse of discretion may also occur "when no reasonable person would adopt the district court's view." Id. Finally, "we will not interfere with the [D]istrict [C]ourt's exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the r elevant factors." Id.

 A. The 60(b) "Excusable Neglect" Analysis

Our prime inquiry is whether Chase should have been relieved from the effects of the District Court's January 22, 2000 order denying its claims.

Fed. R. Civ. P. 60(b) provides, in pertinent part:

Rule 60. Relief From Judgment or Or der

* * *

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly
> Discovered Evidence; Fraud, Etc. On motion and upon
> such terms as are just, the court may r elieve a party or
> a party's legal representative fr om a final judgment,
> order, or proceeding for the following reasons: (1)
> mistake, inadvertence, surprise, or excusable neglect
> . . . or (6) any other reason justifying r elief from the
> operation of the judgment. The motion shall be made
> within a reasonable time, and for reasons (1), (2), and
> (3) not more than one year after the judgment, order,
> or proceeding was entered or taken.

* * *

(Emphasis supplied).

In Pioneer, supra, the Supreme Court delineated the analysis required for a finding of "excusable neglect" (made applicable to Rule 60(b) though Pioneer was a bankruptcy case) and held that courts are permitted, where appropriate, to accept late filings even wher e caused by

7

inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's control. At the outset, the Supreme Court pronounced that the inquiry is essentially equitable and necessitates considering a situation's totality:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the deter mination is at bottom an equitable one, taking account of all r elevant circumstances surrounding the party's omission.

Id. at 395.

While "all relevant circumstances" are properly considered, the Supreme Court specifically delineated four factors:

> These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. In the wake of Pioneer, we have imposed a duty of explanation on District Courts when they conduct "excusable neglect" analysis. In Chemetr on Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995), we addr essed the Bankruptcy Rule that permits courts to accept late-filed claims when the late-filing was due to "excusable neglect." In Chemetron we held that the bankruptcy court's "analysis failed to adequately consider the totality of the circumstances presented." Id. at 349. Specifically, we faulted the court for failing "to make additional relevant factualfindings, including the danger of prejudice to the debtor , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Id. at 350. We thus "remand[ed] the issue to the bankruptcy court, with directions [to] undertake a more comprehensive and thorough determination of whether the totality of the circumstances support claimants' defense of`excusable neglect.' " Id.; see also O'Brien , 188 F.3d at 127 (faulting a

8

district court for not making specific findings as to prejudice).

In our view, the District Court's June 7, 2000, decision suffers from the same deficiencies identified in Chemetron and O'Brien. For example, there is not any indication that the District Court ever separately considered the CIB claim. Though the District Court devotes four pages to a discussion of Chase's "excuses," the only mention of CIB regards Chase's assertion that the administrator should have sent the Request to Cure to CIB one day earlier than it did. Certainly, absent from the discussion is a point by point analysis of prejudice, delay, potential impact on judicial proceedings, or the reason for the delay (with respect to CIB) that our earlier cases contemplated.

With regard to the IFA and W orld Growth claims, the District Court failed to address with specificity: whether Cendant would suffer any prejudice if Chase's motion were granted8; the length of the delay and, particularly, what effect it would have on judicial administration; and whether Chase acted in good faith. We find that this lack of explanation violates the principles we established in Chemetron.

The "reason" for the delay is the one Pioneer factor that the District Court expressly considered. W e conclude, nevertheless, that the District Court inadequately analyzed even this factor. Under O'Brien, the relevant question is whether Chase has a valid reason for waiting so long in

_____

8. We note, nonetheless, that in ter ms of prejudice to Cendant, the District Court found on October 21, 1999, that Cendant would not suffer any prejudice when the District Court extended the deadline for filing initial proofs of claim from June 18 to September 7, 1999. The Court found that Cendant would not be harmed because the original limits of Cendant's financial obligation has not been expanded. Cendant's argument that it is now prejudiced because the settlement money which might now go to Chase will not remain for Cendant to recoup is without merit. In truth, since the only "prejudice" Cendant would suffer by being forced to pay Chase is the "loss of a windfall," we conclude that Cendant will not suffer any prejudice. See O'Brien, 188 F.3d at 128; and In re Cendant Corporation Prides Litigation, No. 00-5199, slip op. (3d Cir. Nov. ___, 2000) for further discussion of the District Court's finding that a time extension would not prejudice Cendant.

bringing forward its explanation for its late cures. Chase claims that it "delayed" because it assumed that its cure documentation had been accepted, and, therefor e, it did not have any reason to "explain" its late submission.

The record on appeal discloses that, first, Chase received Requests to Cure the IFA and World Growth claims on July 28, 1999. Under the terms of these letters, Chase was required to respond by August 4. It did not do so. Nor did Chase explain the late cures when it sent its r esponses on August 12. Second, the administrator sent Chase additional letters by regular mail dated August 5, 1999, r equesting additional information. Chase's Class Action Group did not receive these letters until November 15, 1999, and did not respond until January 4, 2000. Third, on January 24, 2000, a Chase employee in Brooklyn received a letter, which had been sent by Federal Express, fr om the PRIDES Class. That letter informed Chase that the District Court had disallowed the IFA and World Gr owth claims, but the letter mistakenly stated that the deadline for filing an appeal was February 14, 2000. This letter was "lost" in Chase's interoffice mail system while en r oute to Chase's Class Action Group.

The District Court pointed to each of these facts and held that they demonstrated that Chase did not have a valid reason for delay. The District Court explained:"The Court finds that it cannot ignore Chase's own deficiencies in handling the Cendant class action correspondence." Although these facts ultimately may mitigate against Chase, several issues remain unresolved which may bear on the culpability question. Chase's own deficiencies, however, do not automatically bar a finding of "excusable neglect." In O'Brien, we held that, when considering the r eason for a movant's delay, a District Court must examine both parties' conduct, and we specifically concluded that a movant's negligence can still be excusable if it were due, in part, to the conduct of another party. See O'Br ien, 188 F.3d at 128. In short, with respect to Pioneer's"reason for the delay" factor, the District Court should have examined both the administrator's and the PRIDES Class' actions in determining whether Chase's delay were excusable. The District Court did not do so.

10

At best, the District Court's opinion denying Chase's 60(b) motion does not address three of the four factors outlined in Pioneer. We thus find that in failing to apply the Pioneer factors, the District Court did not act in the sound exercise of its discretion. At this juncture, we would normally review de novo the substantive matter of whether "excusable neglect" excuses Chase's delay in submitting the proof of claims. O'Brien, 188 F .3d at 122 (in determining whether there exists an error, the Court of Appeals will "review de novo the District Court's application of the law to the facts"); see also 3d. Cir. L.A. R. 28(b)(review is plenary where lower court erred in applying a legal precept). That inquiry, however, requires our own application of the law to the facts; unfortunately, we find that because such significant gaps remain in the factual findings, we are frustrated in our ability to make a proper determination.

B. Factual Gaps in the Record

We find that the District Court did not r esolve several factual disputes bearing on the degree to which other parties bear responsibility for Chase's delay in providing an excuse for its late cures. Though not exhaustive, we offer the following examples of pending factual issues: 9

(1) Cendant alleges that the administrator sent letters to Chase on August 27, 1999, advising it that its cur e documentation had been submitted late and suggesting that it provide the District Court a reason for the late cures by September 6, 1999. These letters are critical and represent the only notice that Chase is alleged to have received directing it to submit excuses for its late cures. Chase denies receiving these letters. Whether these letters were sent, and if so, which party lost them, matters considerably. Nevertheless, the District Court did not make a finding in its opinion as to whether these letters were sent or r eceived.

(2) In its October 21, 1999, Order, the District Court

_____

9. The record also appears unclear as to whether Chase ever received a request to cure or a notice of rejection for the CIB claim. At oral argument, however, Chase's counsel conceded that the District Court had made a factual finding that Chase received these letters.

11

stated that late-cure claimants, such as IF A and World Growth, would be allowed to participate in the settlement only if they could demonstrate that the late cures were due to "excusable neglect." The PRIDES Class counsel apparently did not seek an explanation from Chase. Cendant defends this decision by ar guing that the District Court was unwilling to consider any explanation that had not been offered prior to September 7, 1999. The District Court's June, 2000, opinion is not clear as to whether Cendant's assertion is correct, and the District Court did not make any finding as to whether the PRIDES Class counsel was obligated to notify Chase.

(3) Cendant maintains that the PRIDES Class counsel sent the January notification letter to a Chase office in Brooklyn, notwithstanding Chase's designation of a Manhattan Post Office box as its contact addr ess, presumably because the letter was to be sent by Federal Express which does not deliver to post office boxes. The District Court should have examined, but did not, Chase's choice of Federal Express, per haps as well as the veracity of the claim that Federal Expr ess does not deliver to post office boxes. Arguably, this point is important because had the letter been sent in the usual fashion to the designated address, presumably it would not have been lost or delayed.

(4) Chase insists that the PRIDES Class counsel should have faxed the January notification letter to its Class Action Group. Cendant counters that, thr ough no fault of its own, the PRIDES Class counsel did not have Chase's fax number. The District Court never evaluated these assertions, which are important for assessing the relative culpability of each party.

III.

After a careful review of the recor d, we find that the District Court's opinion denying Chase's 60(b) motion fails to address three of the four requir ed Pioneer factors. Furthermore, without the District Court's resolution of unsettled factual disputes, such as those set out above, we

12

are unable to determine whether the District Court properly exercised its discretion in applying the r eason for the delay factor. In Gunter, supra, we vacated an award of attorney's fees because a District Court had failed to explain its decision adequately. We wrote: "Notwithstanding our deferential standard of review, it is incumbent upon a district court to make its reasoning and application of the . . . jurisprudence clear, so that we, as a r eviewing court, have a sufficient basis to review for abuse of discretion." Gunter, 223 F.3d at 196. Thus, we will vacate the District Court's June 8, 2000, order and will remand this matter to the District Court for fact-finding and a thor ough, systematic, application of the law to the facts.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13