**In re CENDANT CORPORATION PRIDES LITIGATION.**

**No. CIV. 98–2819(WHW).**

United States District Court, D. New Jersey.

June 7, 2000.

---

. B. John Pendleton, Jr., McCarter & English, Newark, NJ, for Mellon.

Gerald Ford, Landman Corsi Ballaine & Ford, Newark, NJ, for Chase.

Carl Greenberg, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, NJ, for Cendant.

## OPINION

WALLS, District Judge.

On October 21, 1999, this Court published an opinion which addressed late-filed and late-cured claims (collectively referred to as "late claims") filed by holders of Cendant Prides for the period ending April 15, 1998. *In re Cendant Corporation Prides Litig.*, 189 F.R.D. 321 (D.N.J.1999) ("October Decision"). The Court determined that each late claim must be examined for "excusable neglect." On January 14, 2000, the Court finished its analysis of the late claims and issued another Order which, allowed certain late claims. *In re Cendant Corporation Prides Litig*, slip. op. (D.N.J. Jan. 14, 2000) ("January 14 Decision"). A February 22, 2000 Order authorized distribution of rights to settling Prides plaintiffs and designated the October and January Decisions as final and appealable judgments.

Mellon Bank and Boston Safe & Trust Co. (collectively "Mellon") and The Chase Manhattan Bank ("Chase") move to modify the Court's Orders of January 14, 1999 and February 22, 2000 to approve their Prides settlement claims. Mellon moves under Federal Rules of Civil Procedure 6(b) (enlargement of court deadline for excusable neglect); 23(d) (orders entered in a class action); and 60(b) (relief from judgment due to "mistake, inadvertence, or excusable neglect"). Chase moves under Rule 60(b) and also seeks an extension of time to appeal under Federal Rule of Appellate Procedure 4(a)(5) (extension of time allowed if excusable neglect for failure to timely appeal is shown) if its 60(b) motion is denied.

## Background

### Mellon Bank

Mellon states that its claims were submitted on June 18, 1999. Between June 22 and August 17, 1999, the bank received four letters from Valley Forge Administrative Services (the claims administrator) requesting additional information. These requests to cure were handled by a Mellon clerk, John Anthony. Mellon did not respond. Anthony telephoned Valley Forge in January 2000 to check on the claims' status and was told that "Valley Forge was

still waiting from a final ruling from the Judge" (presumably the Court's January 14, 2000 ruling). On March 23, 2000, Anthony called Valley Forge and was told the claims had been rejected by letter on August 17, 1999. Mellon now asserts that the letters sent between June 22 and August 17 were ignored by Mr. Anthony because he was mentally ill.

Mellon's states that its "neglect" of the claims is excusable because: (1) "Mellon only recently learned that its employee charged with responsibility of filing the claims was experiencing extreme psychological and emotional distress"; (2) the claims administrator should have sent Mellon more than "a few form letters"; and (3) relief will not prejudice Cendant or the class.

### Chase Manhattan Bank

Chase Manhattan submits the motion on behalf of three clients: Capital Income Builder ("CIB"), Income Fund of America ("IFA"), and World Growth.

### CIB Claim

Chase asserts that on June 15, 1999, it submitted proofs of claim for the three accounts. The claims included computer printouts of holdings. Valley Forge determined that the printouts did not accurately state holdings as of April 15, 1998 and sent requests to cure on July 19, 1999 which Chase asserts it did not receive. Brf. at 4 ("Chase has no record of receiving that letter"). Valley Forge also states that it sent Chase an August 17, 1999 letter which rejected the CIB claim for failure to cure. Chase asserts that this letter was never received. Valley Forge also sent, and Chase received, an August 5, 1999 letter which stated that the CIB claim was deficient. According to Chase that letter did not arrive at the Chase class action claims group, the group handling the Prides claims, until November 15, 1999.

### IFA/World Growth Claims

As described, by letter dated July 15, 1999, Valley Forge requested Chase cure IFA (claim number 7807) and World Growth (8529) claims for the same reason the CIB claim was rejected—insufficient supporting information for the claims. Due to Chase's internal mail routing system, these letters did not arrive at Chase's class action claims group until July 28, 1999. At this point, Chase claims that the employee who received the requests to cure was "confused" by the requests to cure and her supervisor was out of the office. Chase responded to the requests to cure on August 12th by fax to Valley Forge.

Valley Forge, however, maintains that by letter dated August 27, 1999, Chase was advised that a reason needed to be provided for the late cures. Chase claims that this letter was misdirected because Valley Forge placed the wrong control number on IFA's account—7808 instead of 7807. Chase also states that the letters did not include that name of Chase's contact person on the address label.

Cendant filed objections to the two claims in September 1999 because of the late cures. Cendant's submissions also recited an incorrect name for IFA, Investment Co. of Am. instead of Income Fund of Am., but the correct control number, 7807. In January, the Court rejected World Growth's claim and claim number 7807, and used the name provided by Cendant for the claim holder. The Court reasoned that "no excuse" was provided for the late cures.

By Federal Express, Lead Counsel advised Chase of the rejections on January 21, 2000, and this letter too was "apparently lost in transit." It was received and signed for by Chase on January 24th and now cannot be located. Valley Forge also advised Chase of the rejections by letter of March 14, 2000, which was received by Chase.

Chase contends that (1) excusable neglect exists because it did not receive a number of key letters from Valley Forge; (2) no prejudice to Cendant exists; (3) Chase acted in good faith; (4) lack of

notice to Chase about claim rejections violated due process; and (5) the unreasonably strict settlement deadlines violated due process.

## Analysis

*Rule 60(b)*

Rule 60(b) allows that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . .

Such motions seek "extraordinary relief [and] should be granted only where extraordinary justifying circumstances are present." *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir.1991). This Court has previously reviewed the excusable neglect standard. *In re Cendant Corp. Prides Litig.,* 189 F.R.D. 321, 324 (D.N.J.1999):

The Supreme Court has decreed that the determination of whether one party's neglect to adhere to a deadline is excusable should take into account all relevant circumstances surrounding the delay. *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Relevant factors include "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74. To this roster, the Third Circuit has added "(1) whether the inadvertence reflected professional incompetence such as ignorance of the rules of procedure, (2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, and, (3) a complete lack of diligence." *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 517 (3d Cir.1988).

*See also MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086 (3d Cir.1995). That said, as to Mellon:

Cendant first argues that it should not be responsible for Mellon's failure to supervise a clerk in its class action filings department. As a fiduciary for its investors, Mellon should have a procedure to review class action notices and ensure compliance. Cendant adds that the clerk's illness was over by June 1999 (medical treatment ceased in May 1999) and the error could and should have been caught and resolved much earlier.

Cendant further argues that Mellon is moving for relief over four months after it actually learned claims were rejected: Mr. Anthony's supervisor, Tina Davis, learned that the claims were rejected in January 2000 when TIS, a client of Mellon, called about a rejection it had received directly from Valley Forge.

Cendant also argues that the "excusable neglect" issue is already before the Third Circuit on the appeal filed by Santander Bank, another rejected claimant, and is no longer before this Court. *See Venen v. Sweet,* 758 F.2d 117 (3d Cir.1985) (if subject matter of a Rule 60(b) motion is on appeal, district court must first advise circuit of its intention to grant 60(b) motion and circuit would remand case to district court).

Cendant additionally posits that Mellon cannot object to timelines set in the settlement order as too short; Mellon should have objected to the scheduling at time of settlement if at all. Finally Cendant requests the opportunity to re-review Mellon's claims because it maintains that the supporting documentation remains deficient.

Mellon responds that Cendant does not challenge its records which indicate that Mellon owned the Prides as of April 1998. And adds that the computer records originally (and timely) submitted were sufficient because proof of holdings could be shown through records kept "in the ordi-

nary course of business." Further, Mellon urges that the 60(b) motion is timely as brought within one year of entry of judgment. *See* Fed.R.Civ.P. 60(b). It also contends that Santander's appeal is distinct from Mellon's because this 60(b) motion contains different subject matter not now before the Third Circuit.

First, the Court rejects Cendant's argument that the excusable neglect issue is on appeal because of its factual irrelevance. Only Santander's claim denial—based on its factual circumstances—is under review. Mellon and Chase's claims arising from different subject matter are not on appeal.

■ The Court determines that Mellon's circumstances give rise to a finding of excusable neglect for its failure to timely respond to requests to cure in July and August of 1999. Mellon's assertions are supported by the affidavit of John Anthony which details that: (1) he had a number of familial deaths—of his father, his grandmother, and two aunts—between 1998 and 1999; (2) he cared for and still cares for his ill mother; (3) he was responsible for handling the sale of his family's home in February 1999; (4) he received treatment for depression between February 1999 and May 1999 but refused medication; (5) he did not advise Mellon of his problems—to the contrary he assured his supervisor that the Cendant account was on track; (6) he remained depressed until early 2000; and (7) due in large part to his illness and family issues he "made no attempt to respond to the requests for additional information until January of 2000." Anthony Aff. ¶¶ 11–22. Cendant's protestations that Mellon should have nevertheless caught Anthony's oversights cannot outweigh the circumstance that a formerly reliable (but then ill) employee affirmatively misrepresented to his employer that no requests to cure had been received. Anthony Aff. ¶ 23.

Mellon's Rule 60(b) motion is granted. The Court finds that Mellon's neglect to (1) file timely requests to cure and (2) participate in Cendant's challenges to its

claims in the fall of 1999 is excusable because of Mr. Anthony's ongoing illness. *See generally Balik v. Apfel,* 37 F.Supp.2d 1009, 1010–1011 (S.D.Oh.1999) (using Rule 60(b) to excuse failure to timely appeal because plaintiff suffered from psychological illness). Moreover, Anthony continued to misrepresent the status of the claims to his supervisor until early 2000, when he called Valley Forge to check on the claims' status. *See* Davis Aff. ¶¶ 6–8.

Finally, the Court refers to its earlier Opinion which addressed and rejected Cendant's argument that it would be prejudiced by the allowance of contested claims. 189 F.R.D. at 324–25. While the Court ruled in the Santander motion that Cendant would be prejudiced if the bank's Rule 60(b) were granted, that ruling is confined to Santander's situation where the neglect was otherwise inexcusable. *See* Tr. at 13. Here the Court repeats that it:

> finds that Cendant will not be harmed by an enlargement of the deadlines contained in the settlement documents because the original limits of Cendant's bargained-for financial obligations, $341,480,861, have not been expanded. Nor has the potential number of issued rights, 27,161,474, increased.

189 F.R.D. at 325.

Mellon is directed to submit responses to Cendant's requests to cure on or before June 19, 2000 to Cendant and Valley Forge Administrative Services. If these records, together with the "records kept in the ordinary course of business" submitted by Mellon on June 18, 1999 establish that Mellon falls within the settling class, the claims are to be accepted. The parties are urged to come to agreement on those claims Cendant now challenges as unsupported. With regard to Chase:

Cendant initially observes that Chase's excuses, based mainly on failure of its internal mail system, resemble those of Santander rejected by this Court—"if you [Santander] have some incompetent han-

dling your books [referring to Santander's excuse that mail clerks hid the incoming mail], that is your problem and not the Court's." *See* Greenberg Cert. Ex. H, Transcript of Santander's Rule 60(b) hearing at 161 ln. 6–17, 19–23 (Mar. 17, 2000). Cendant counters Chase's argument that various letters rejecting the claims and/or requesting more information were never sent by the certification of the Valley Forge administrator who represents that these letter were timely sent to the correct address. *See generally* Ewing Affs. According to Cendant, Chase's argument is further weakened by its "cumbersome" procedures for · internally routing mail which resulted in both late deliveries and lost letters. *See* CD Brf. at 6–7. (detailing Chase's mail routing procedures). Additionally, Cendant asserts that it should not be responsible if one of Chase's low-level clerks was "confused" after she received the July 15 letters requesting cures.

Cendant adds that Chase obviously knew of the rejection much earlier than April 2000, when this motion was filed. CD Brf. at 13: "Chase admittedly received the January 17, 2000 letter from Lead Counsel, which informed Chase of the Court's denial of the IFA and World Growth claims and the right to appeal within 30 days."

As with Mellon, Cendant contends that Chase has no standing to object that deadlines set in the Settlement Agreement violated due process—if they thought the time line for settlement was too short, they should have objected at time of settlement. In any event, publication of settlement in major newspapers of settlement procedures gave adequate notice to the class to alleviate due process concerns raised now. Cendant also relies on its arguments in opposition to Mellon's motion, including, but not limited to, the ground that the issue is now before the Third Circuit. As earlier discussed, the Court rejects that contention.

In reply, Chase challenges Cendant's presumption that the letters sent July 19, August 17 and August 27, 1999, were actually mailed to the bank. *See, e.g., Godfrey v. United States,* 997 F.2d 335 (7th Cir.1993) (discussion presumption of mailing). Particularly, it attacks the assertion that the August 27th letter, which advised claimants of the need to submit reasons for a late cure, was sent; that at least 39% of late cure claimants never provided an reason for lateness in response to letters sent August 27–29, 1999 "strongly evidences that something went awry with that crucial notice letter." Reply Brf. at 1. The Court, without further exposition, summarily rejects such a non-sequitur. Additionally, some of the mailing labels for the August 27th letter were handwritten due to an electrical failure at Valley Forge during a thunderstorm. Ewing Decl. ¶ 2. Chase also attacks other procedures at Valley Forge to attempt to raise doubts about the company's assertions that the letters were sent. For example, it asserts that the CIB request to cure was sent to Chase on July 19th when it should have been mailed by July 18th.[1] It also questions the mix-up between claims 7807 and 7808.

The Court finds that it cannot ignore Chase's own deficiencies in handling the Cendant class action correspondence. A letter dated July 15, 1999 was not received in Chase's class action group until July 28, 1999; a letter dated August 5, 1999 was not received until November 15, 1999; a letter dated January 21, 2000, forwarded by a different carrier, Federal Express (not the United States Postal Service), was received but never made its way to the class action group. As stated, "if you have inexperienced [mail room] people handling a million plus account, that's your problem, not mine." Santander Tr. at 161. So here—evidenced by the delays caused by Chase's mail routing system and no one else (absent documentation of a conspiracy of delay between the United States Postal

---

1.  July 18, 1999 was a Sunday.

Service and Federal Express). These demonstrated shortfalls are not outweighed by Valley Forge's failure to mail requests to cure on a Sunday or even its transposition of claims 7807 and 7808. The Court also observes that Chase was always on notice that claim 7807 was deficient, regardless of the holder's name assigned.

■ The unjustified ineptitude of Chase evidences its neglect to timely file requests to cure, its neglect to participate in the challenges to disputed claims in the fall of 1999, and its failure to file this motion until April 2000 although Lead Counsel had informed it of the rejections in January 2000. These circumstances of neglect are inexcusable. Also the Court has the (circumstantial) sense that Chase's " ... asserted inadvertence[s] reflect[ ] an easily manufactured excuse incapable of verification by the court." *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir.1988). It must follow that the Rule 60(b) motion is denied.

■ Chase's additional argument, that its due process rights were violated, is also unpersuasive. First, the settlement notice, which contained the deadlines, was sent to claimants via regular mail *and* published in major newspapers. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (due process concerns satisfied even where every class member did not receive notice). Here the Court will not abrogate the presumption of mailing of notice to Chase because of the irregularities directly traceable to Chase. Second, Chase concedes that it received at least one letter which requested cures, placing the company on notice that its claims were at risk. *See* July 15, 1999 Requests to Cure IFA and World Growth (received by Chase's class action group on July 28, 1999; August 5, 1999 Request to Cure CIB (not received by Chase's class action group until November 1999). From these circumstances, the Court concludes that Chase's due process rights were not violated.

Chase also asserts that its due process rights were violated by the 20–day response to cure deadline. It states that the Third Circuit holds that any period of less than one month is too short. *See Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 834 (3d Cir.1973) (one month period for broker to submit class action filings on behalf of clients was not reasonable). Cendant responds that there is no "bright line" rule and Courts must examine the "reasonableness" of the deadlines in light of the individual settlement at issue. Here the claim timeline was "heavily negotiated" by Cendant and lead counsel. Additionally, Chase did not ask to intervene to object to the settlement deadlines at time of settlement.

■ The Court finds that the 20–day response to cure deadline was reasonable in these circumstances. *Greenfield* addressed the time allowed to respond to the initial notice of settlement, not the time to respond to a request for additional information. *See id.* at 834 ("A one-month period hardly seems sufficient time for brokerage firms to search their records, notify customers, probably by mail, for whom they held shares in street name, received instructions from these customers, again probably by mail, and file the proofs of claim."). The parties to this settlement had well over one month to respond to the initial notice. Allowing an additional three weeks to respond to deficient claims was reasonable. Unlike *Greenfield*, the Prides claimants were already on notice of the settlement, they knew what type of information required to prove ownership, and they had already gathered and sent in at least some of the relevant information.

*Federal Rule of Appellate Procedure 4(a)*

In the alternative, Chase requests additional time to file a notice of appeal under Federal Rule of Appellate Procedure

4(a)(5). Under this Rule, additional time to appeal may be granted if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) that party shows excusable neglect or good cause.

Fed. R.App. P. 4(a)(5)(i)-(ii). Chase meets the deadline and urges the Court to find excusable neglect. Chase, however, admittedly received Lead Counsel's letter in January 2000 which informed it of the denials and its right to appeal; the Court will not excuse the "loss" of this letter post-receipt. *See, e.g., Rosenberg v. U.S. Court of Appeals for District of Columbia,* No. 99CV00497, 2000 WL 156879, at *1 (Jan. 11, 2000) ("it is clear that appellant has failed to show 'excusable neglect or good cause.' Appellant alleges that he did not receive the notice because he was 'out of town.' "). Chase's neglect to file a notice of appeal under these circumstances does not entitle it to relief under Rule 4(a).

### Conclusion

Mellon Bank's Rule 60(b) motion is granted. Chase's Rule 60(b) motion and its request for an extension of time to file a notice of appeal are denied.

### ORDER

Mellon Bank and Boston Safe & Trust Co. (collectively "Mellon") and The Chase Manhattan Bank ("Chase") move to modify this Court's Orders of January 14, 1999 and February 22, 2000 to approve their Prides settlement claims. Mellon moves under Federal Rules of Civil Procedure 6(b) (enlargement of court deadline for excusable neglect); 23(d) (orders entered in a class action); and 60(b) (relief from judgment due to "mistake, inadvertence, or excusable neglect"). Chase moves under Rule 60(b) and also asks for an extension of time to appeal under Fed. Rule of Appellate Procedure 4(a)(5) (extension of time allowed if excusable neglect for failure to timely appeal is shown) if their 60(b) motion is denied. For the reasons stated in the accompanying Opinion and for excusable neglect shown:

It is on this 9th day of June, 2000,

ORDERED that Mellon's motion is granted pursuant to Federal Rule of Civil Procedure 60(b); it is further

ORDERED that Chase's Rule 60(b) motion is denied; it is further

ORDERED that Chase's request for an extension of time to appeal is denied.