**In re CENDANT CORPORATION SECURITIES LITIGATION.**

**No. CIV. 98–1664(WHW).**

United States District Court, D. New Jersey.

June 20, 2000.

Gerald Palmer, Jones Day Reavis & Pogue, Los Angeles, CA, for Davidsons.

Daniel L. Berger, Bernstein Litowitz Berger & Grossman, New York City, for Lead Plaintiffs.

Carl Greenberg, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, NJ, Samuel Kadet, Skadden Arps Slate Meagher & Flom, New York City, for Cendant.

Douglas S. Eakeley Lowenstein Sandler, Roseland, NJ, for E&Y.

## OPINION

WALLS, District Judge.

Janice and Robert Davidson move on behalf of themselves and various trusts as trustees [1] to clarify the definition of the *In re Cendant Securities Litigation* class (the "CalPERS class") or, in the alternative, to extend their time to request exclusion from the class ("opt out") pursuant to Federal Rule of Civil Procedure 6(b). Cendant Corporation ("Cendant") cross-moves to enforce this Court's March 29, 2000 Injunction against continued prosecution by the Davidsons of their arbitration proceeding against Cendant. For the reasons below, the class is defined to include the Davidsons' interests and Cendant's motion is granted.

### Background

CUC International, Inc. ("CUC") acquired by merger Davidson & Assoc. ("DAI"), a company largely owned by Janice and Robert Davidson, in July 1996. The Davidsons (including various trusts) received CUC stock which was subject to certain resale restrictions in connection with the acquisition. The Davidsons became directors of CUC and officers and directors of CUC's DAI subsidiary. In January 1997, CUC dismissed the Davidsons from their positions as corporate officers. Then in May 1997, CUC and the Davidsons entered into a Settlement Agreement to resolve pending employment disputes related to the dismissal; as part of the consideration the Davidsons received stock options with a strike price equal to the price of CUC stock on April 17, 1997. They also resigned from the CUC board. In December of that year, CUC merged with HFS to form Cendant Corporation.

On April 15, 1998, Cendant announced that it had uncovered accounting irregularities in the financial reports of CUC. The present class action was initiated April 16, 1998 (the "CalPERS action"). At the end of 1998, the Davidsons demanded arbitration to recover

---

1. Unless otherwise distinguished, all references to "the Davidsons" or "the Davidsons' interests" include Janice Davidson, Robert Davidson and the trusts.

damages or to rescind the 1997 Settlement Agreement and the 1996 sale, charging that the CUC stock received by them was improperly valued. In response, Cendant filed an action for declaratory and injunctive relief in the Central District of California alleging that the Davidsons' claims were not arbitrable because barred by the 1997 Settlement Agreement. The district court rejected the argument and Cendant appealed to the Ninth Circuit (appeal *sub judice*). The parties have agreed to stay arbitration except for ongoing discovery until the appeal is resolved. The Davidsons also filed a "protective" complaint in the Central District of California to preserve their right to litigate if the Ninth Circuit bars arbitration. The Judicial Panel on Multi–District Litigation ("MDL") transferred that action to this Court for pre-trial purposes.

On August 6, 1999, this Court approved notices for potential class members in the pending CalPERS class action. *See* Order Concerning Notice of Pendency of Class Action. Those notices were published in *The Wall Street Journal*, *The New York Times* (National edition) and on the *Dow Jones Business Newswire*. The notice defined the CalPERS class as "all persons and entities who purchased or otherwise acquired publicly traded securities (other than PRIDES) of either (i) Cendant Corporation ("Cendant") or (ii) CUC, International, Inc. ("CUC") during the period beginning May 31, 1995, through and including August 28, 1998, and who were injured thereby." *See* Notice of Pendency of Class Action (Oct. 8, 1999) ("class notice") at ¶ 1. Excluded from the Cendant Class are: "(i) defendants; (ii) members of the family of each individual defendant; (iii) any entity in which any defendant has a controlling interest; (iv) officers and directors of Cendant and its subsidiaries and affiliates; (v) the legal representatives, heirs, successors, or assigns of any such excluded party." *See* Class Notice at ¶ 6. The notices directed those who wished to be excluded from the class to send such requests not later than December 27, 1999.

In October 1999, class notices were mailed using the "addresses of all known potential Class members from databases maintained by CUC and Cendant in the ordinary course of business." CD Brf. at 8. According to Cendant, it mailed at least ten class notices to the Davidsons and the trusts at three separate addresses (two in Palos Verdes, CA; one in Torrance, CA). Those addresses corresponded with the stock transfer records maintained by Cendant and CUC. The United States Postal Service did not return the Torrance notices but did return the Palos Verdes notices. Although the claim administrator searched for any new addresses on file with the postal service, no new information was listed.

The Davidsons assert they never received the class notices. Cendant maintains that these California addresses are the ones of record for these shareholders and are also the addresses to which it sent the 1999 and 2000 Cendant proxy statements. Plaintiffs counter that Cendant "should have known" of a new Nevada address and add "[w]e began receiving Cendant shareholder information at that [Nevada] address prior to August 1999." Dav. Aff. at ¶ 12.

Three weeks before the opt-out deadline on December 7, 1999, Cendant and Lead Counsel announced a proposed settlement of the CalPERS action. This announcement received extensive press coverage. In February 2000, while negotiating a stipulation to continue pre-hearing dates established in the stayed California arbitration, Cendant's counsel declared that the Davidsons failed to opt out of the CalPERS class. Furthermore, any recovery for stock claims in the California arbitration would be limited to amounts the Davidsons and trusts received in the proposed CalPERS settlement.

The next month, this Court preliminarily approved the proposed settlement. Its Order provided that "[p]rosecution by any Class member of any action or claim that is subject to the release and dismissal contemplated by the Cendant settlement or the E & Y settlement is hereby enjoined." Hearing Order at 2 (Mar. 29, 2000).

*Motion, Cross–Motion and Arguments*

Plaintiffs move either (1) to clarify the order certifying the CalPERS class to ex-

clude their interests or (2) to extend their time to opt out of the class under Federal Rule of Civil Procedure 6(b) (excusable neglect). They assert they are not members of the Cendant Class because (1) the shares are not "publicly traded" as defined by the class notice because they were acquired as unregistered shares in a merger transaction and (2) as former officers and directors of CUC, they were excluded from class membership. The latter argument is based on the contention that "the apparent intent [of those defining the class] was to exclude from the Class all named defendants, as well as persons who might be defendants." Dav. Brf. at 15. Plaintiffs add that even if they are Class members, this Court cannot dispose of their claims because those claims are the subject of ongoing arbitration. They further maintain that the time to opt out should be extended for "excusable neglect," since they never received class notice, did not believe themselves Cendant class members and Cendant did not take the position they were members until February 2000.

Cendant objects and cross-moves to enforce this Court's March 29, 2000 Order which set hearing dates for the proposed CalPERS settlement and enjoined prosecution "by any Class Member of any action or claim that is subject to the release and dismissal contemplated by" the settlement. Ord. at 2. Cendant argues that the Davidsons' continued prosecution of their arbitration violates this injunction.

Cendant asserts that plaintiffs are class members because the CUC stock acquired by plaintiffs is "publicly traded." They explain, "[t]his is best demonstrated by the fact ... that, once CUC issued a registration statement covering these shares [received in the July 1996 sale of DAI], in October 1996, the Davidsons and the Trusts sold over 20 million of their approximately 32 million CUC common shares within a month and proceeded to sell another 6.6 million shares over the course of the next fourteen months, all through trades in the public markets and all during the class period." CD Brf. at 16; Greenberg Decl. Ex. C. Cendant avers that all parties considered restricted stock ac-

quired through sale/merger of subsidiaries "publicly traded" because the Plan of Allocation for the CalPERS settlement specifically contemplates payments to Class Members who, like the Davidsons, acquired restricted CUC stock through stock exchanges. The Plan of Allocation specifically includes the DAI merger as an example of a covered transaction. Greenberg Decl. Ex. L.

Also, according to defendant, the Davidsons, as former *CUC* directors, do not fall within the class exclusion for *Cendant* directors; Cendant did not exist any time during the Davidsons' tenure. Cendant formed seven months after the Davidsons left CUC. Cendant emphasizes that the class notice includes those who acquired publicly traded stock "either of *Cendant Corporation or of CUC International, Inc.*" in the class yet only excludes *Cendant* directors and officers from the class.

Cendant adds that plaintiffs, represented by experienced counsel, are not entitled to an extension of time to opt out because notices were sent to the correct addresses of record. Further, the class notice was published in major newspapers, and the settlement received extensive press coverage.

Finally, Cendant states that this Court has the power under the All Writs Act, 28 U.S.C. § 1651(a) and the Anti–Injunction Act, 28 U.S.C. § 2283, to enjoin arbitration activity by class members. Federal courts may issue injunctions "where necessary in aid of jurisdiction." Cendant quotes *In re Painewebber Ltd. Partnerships Litig.*, No. 94–8547, 1996 WL 374162, at \*3 (S.D.N.Y. July 1, 1996): " 'where a federal court is on the verge of settling a complex matter, and state court proceedings may undermine its ability to achieve that objective,' the situation is sufficiently analogous to an *in rem* action that a stay of parallel state court proceedings is appropriate."

CalPERS Lead Counsel join the discussion and represent that the CUC shares acquired in the DAI sale/merger are "publicly traded," but as former CUC directors the Davidsons are excluded from the class.[2] They base

2. Lead Counsel does not address the issue of whether shares held by the trusts should be con-

their argument on the structure of the CUC/HFS merger where CUC was the surviving company renamed Cendant. Lead Counsel also declares that they "did not prosecute this action to protect the interests of Cendant's officers and directors, whether they served before or after the CUC/HFS merger." LC Brf. at 6. Defendant Ernst & Young agrees with the contention that Lead Counsel and Cendant intended former CUC officers to be eligible as class members but recommends that the CUC/Cendant distinction not extend to other actions. *See* Letter at 2 ("Accordingly, E & Y respectfully submits that any findings on class definition that pertain to the negotiated definition of 'Cendant' are limited to the definition of that term as negotiated in settlement between Cendant and Lead Counsel.").

In reply, the Davidsons define the term "publicly traded" as shares (1) acquired by trades in the public market or (2) publicly tradeable (in the market) when acquired because they were issued pursuant to a registration statement. They say that "[t]he common stock that the Davidson Interests continue to hold was not registered when acquired, is not registered now, and has never been registered." Dav. Reply Brf. at 12. Moreover, because the stock was not acquired through a registered public offering, plaintiffs are barred from pursuing any Section 11 claims against Cendant—a major claim of the class. Additionally, Lead Counsel, in the amended class action complaint, purport to represent those who acquired stock via the HFS/CUC Registration and Joint Proxy Statement and those who "purchased CUC and Cendant publicly traded securities on the open market." Compl. ¶ 27. The Davidsons did neither.

In conclusion, by use of "publicly-traded" to describe "common stock" in the class definition, the parties allegedly excluded those who held non-registered, non-publicly acquired common stock. The plaintiffs argue that Cendant cannot now rely on the description of common stock holders in the plan of allocation, created long after the class was defined and during the pendency of the Davidson's arbitration.

And the Davidsons raise the shield of "a federal court judgment . . . requiring arbitration of the Davidson Interests' claims." "That judicial determination means that this Court is precluded by the Arbitration Act from addressing the merits" of the Davidsons' claims. Dav. Reply Brf. at 19. They seek *res judicata* effect from the Central District of California's ruling (made before the opt-out deadline) which dismissed Cendant's motion to enjoin arbitration and declared the Davidsons' claims arbitrable. Thus, according to plaintiffs, Cendant "is precluded from bringing this collateral attack" on the California court's judgment.

To Cendant's assertion that as former *CUC* officers they are not excluded from the settling class, the Davidsons answer "Cendant relies on a distinction without a difference." "Despite the change of name from Cendant to CUC, the underlying entity remained the same." *See* Cendant's Form 8–K and appended press release describing merger of HFS into CUC.

Cendant responds: "Every share of CUC common stock issued in connection with the DAI merger . . . was covered by a Form S–4 Registration Statement filed with the [SEC] by CUC on June 21, 1996." Greenberg Reply Decl. Ex. A (Form S–4). According to the company, any restriction on the Davidsons' ability to resell these shares occurred because they were deemed "affiliates" of CUC due to their large holdings and manner of acquisition. *See, e.g.,* 17 C.F.R. § 230.145(d) ("Rule 145"); *see also* § 230.144. The Rule 145 restriction, however, could be avoided if the shares were sold pursuant to a later registration statement. Consequently, DAI and CUC permitted the Davidsons to "demand that these [merger] shares be made subject to a subsequent registration statement immediately after the DAI merger, or to 'piggyback' their shares onto a subsequent registration statement." Greenberg Reply Decl. Ex. B ("Affiliate Agreement"). The Davidsons eventually sold many of these shares on the public market pursuant to the terms of the Affiliate Agreement.

sidered shares of "Cendant officers and directors" and also excluded from the class.

Cendant challenges the Davidsons' assertion that the class does not adequately represent them. Cendant asserts that the Davidsons possess Section 11 claims because the shares were registered under a Form S–4. Also, the Davidsons are pursuing Section 11 claims against Cendant in their pending arbitration. Even if no Section 11 claim exists, however, there are other class members who cannot pursue such claims—"an enormous percentage of the Class consists of those whose only claims arise under Section 10(b)." Cendant further argues that the Davidsons selectively quote the amended class action complaint and omit the paragraph which avers that some claims against Cendant are based on its issuance of hundreds of millions of shares at inflated prices to acquire other companies. Compl. ¶ 38. Additionally, the defendant observes the class is defined by the Court-approved Class Notice, not the complaint.

As to the issues surrounding arbitration, defendant's position is that claims subject to arbitration can and should be resolved in a class action if the party asserting the claims fails to request exclusion from the action. *See In re Painewebber Ltd.*, 1996 WL 374162, at *3–4 (denying motion to compel arbitration because of failure to opt out). Cendant also questions the *res judicata* effect of the decision declaring the claims arbitrable: The Central District of California case was decided before Cendant knew the Davidsons were actual (instead of merely potential) class members.

> Thus, at the time the California court was deciding that the Davidsons' and the Trusts' claims were arbitrable, it simply could not have decided (nor could Cendant have asserted) that the Davidsons and the Trusts were nonetheless bound to proceed in the CalPERS Action because they were no more than potential Class Members who still had every right to opt out....

Although the California Court decided the claims were arbitrable, the issue of the Davidsons' failure to opt out from the class is presented for the first time.

## Analysis

### Publicly Traded

■ The Davidsons contend that their shares were not "publicly traded" because they were not "publicly tradeable" at acquisition. Dav. Reply Brf. at 12. The shares were registered pursuant to a Form S–4 Registration Statement, subject to Rule 145 restrictions, and could not be immediately sold under either Rule 144, 145, or the terms of the Affiliate Agreement. *See, e.g.,* 17 C.F.R. §§ 230.145, 230.144; *see also* Affiliate Agreement.

Exclusion is not implied merely because the Davidsons' shares were not publicly trade*able*. The DAI merger shares were the same type bought and sold regularly on the public market, that is, publicly trad*ed*. Their value was necessarily identical to CUC common stock in the market. *See* Cendant Brf. at 16 (the Davidsons' shares, "being CUC common· shares identical to all other CUC common shares, were certainly publicly-traded securities."); *see also* LC Brf. at 5 ("While it may have been that there were certain restrictions on the Davidsons' ability to transfer the stock they received, it was still a type of security—CUC common stock—that was publicly traded during the Class Period."). This conclusion is supported by the fact that a majority of the shares was later sold on the public market.

Moreover, plaintiffs' assertion that the shares were not "publicly traded" because not "acquired in a public market," is not persuasive. Reply Brf. at 12. The class notice specifically encompasses shares purchased "or otherwise acquired." The intent to include shares issued in CUC's several acquisitions during the class period is demonstrated by the Plan of Allocation which specifically addresses certain transactions, including DAI. *See* Plan of Allocation of Net Settlement Fund at 7. The Court recognizes that the plan was executed after the opt-out period but cannot accept plaintiffs' argument that Cendant's desire to trap them into the class *ex post facto* shaped the Plan of Allocation because Cendant demonstrated at oral argument, unchallenged, that the plan was drafted by Lead Counsel without the benefit of Cendant's input.

■ Nor can the Court agree that the plaintiffs' stock is not "publicly traded" be-

cause their interests are not adequately represented in the class action. Plaintiffs distinguish their interests because (1) they do not have Section 11 claims; (2) they are not proceeding on a "fraud on the market theory"; and (3) the Amended Class Action Complaint references shareholders who "purchased their CUC and Cendant publicly traded securities on the open market." The Court does not conclude that the Davidsons' interests are so materially distinguishable for several reasons: the settling class includes shareholders who have only Section 10(b) claims; the Davidsons pursue Section 11 claims in arbitration (*See* Request for Arbitration at ¶ 139(ii)); any alleged "fraud on the market" affected the pricing of common stock at the time DAI was acquired; and the Complaint addresses shareholders created by CUC's spate of mergers and acquisitions during the class period. *See* Compl. at ¶ 38. Moreover, at the core of the Davidsons' claims lies the contention shared by all other class members—CUC then Cendant's accounting irregularities created overvalued common stock. *See also In re Discovery Zone Securities Litig.*, 181 F.R.D. 582, 590–91 (N.D.Ill.1998) ("[T]he emphasis is on common behavior of the defendants, not the plaintiffs.... [The claims] present a similar 'overall scenario' of common defendant conduct.").

The Court finds that the Davidsons shares are and were "publicly traded."

### CUC/Cendant

■ The class notice excludes from the settling class "officers and directors of Cendant and its subsidiaries and affiliates." The Davidsons and Lead Counsel maintain that CUC D & O's are identical to Cendant's and therefore should be excluded from the settling class. *See* Dav. Reply Brf. at 21 ("Despite the change of name from Cendant to CUC, the underlying entity remained the same."). Accepting for the purpose of analysis the argument that CUC (as the surviving company of the CUC/HFS merger) is identical to Cendant, the Court still concludes that pre-merger CUC D & O's are not excluded from the class.

To determine the scope of the class exclusion, the Court need only look to the plain language of the class notice:

[A] consolidated class action lawsuit ... has been brought on behalf of all persons and entities who purchased or otherwise acquired the publicly traded securities (other than PRIDES) *either of Cendant Corporation ("Cendant") or of CUC International, Inc. ("CUC")* .... [Notice at ¶ 1]

The action alleges violations of the Securities Act of 1933 (the "Securities Act") and of the Securities Exchange Act of 1934 (the "Exchange Act") by the following defendants:

a. *Cendant.*

b. The following former officers of CUC *and later of Cendant:* [list omitted].

[Notice at ¶ 5(a)-(b)]

Excluded from the Class are: (i) defendants; ... (iv) *officers and directors of Cendant and its subsidiaries and affiliates* .... [Notice at ¶ 7]

Lead Plaintiffs have asserted claims against *Cendant; its officers and directors; the officers and directors of CUC;* and E & Y for alleged violations of the federal securities laws .... [Notice at ¶ 9]

During the Class Period, *CUC and Cendant* published falsely inflated financial results, issued materially misrepresented financial statements and made other misleading representations .... [Notice at ¶ 9(a)]

(Emphasis added.)

Such language demonstrates that both Defendant Cendant Corporation and Lead Plaintiffs regarded CUC and Cendant as distinct for class definition and class exclusion. *See also* Stip. of Settlement at ¶ 1(h) (" 'CUC' means CUC International Inc. and its subsidiaries prior to its merger with HFS to form Cendant"). To now say otherwise would "rewrite" the class notice. *See generally Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 815 F.Supp. 1488, 1500–01 (D.Del.1993) ("Courts should first look to the language of the agreement to determine intent"), *aff'd,* 18 F.3d 927 (Fed.Cir.1994).

### Federal Rule of Civil Procedure 6(b)

██ The Davidsons move to extend the opt-out deadline under Federal Rule of Civil Procedure 6(b) if the Court determines they are class members:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion .... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

This Court has recently reviewed the excusable neglect standard. *See In re Cendant Corp. Prides Litig.*, 98 F.Supp.2d 602, at 604-05 (D.N.J.2000) (quoting *In re Cendant Corp. Prides Litig.*, 189 F.R.D. 321, 324 (D.N.J.1999)):

> The Supreme Court has decreed that the determination of whether one party's neglect to adhere to a deadline is excusable should take into account all relevant circumstances surrounding the delay. *See Pioneer Invest. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Relevant factors include "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489. To this roster, the Third Circuit has added "(1) whether the inadvertence reflected professional incompetence such as ignorance of the rules of procedure, (2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, and, (3) a complete lack of diligence." *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir.1988).

██ The Davidsons assert that they never received the class notice. Their alleged failure to receive notice, however, does not warrant an extension of the exclusion deadline. The publication of the class notice in major newspapers, combined with Cendant's mailing of individual notices to addresses of record, satisfied the company's duty to inform potential class members of the action. *See generally In re Cendant Corp. Prides Litig.*, 98 F.Supp.2d 602, at 607–08 (D.N.J.2000) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 230–31 (D.N.J.1997) ("[D]ue process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties."). Moreover, both the initiation of the class action and the proposed settlement received press coverage independent of the published notices.

Additionally, the Davidsons' assertion that their failure to opt out is excusable because Cendant acted as though they were not class members is not convincing. They became class members only as of December 27, 1999. Cendant's reactions to the Davidsons' arbitration activity before that date are irrelevant; the Davidsons fail to demonstrate any right to rely on Cendant's defensive maneuvers.

Plaintiffs' motion for an extension of the opt-out deadline is denied.

### Cendant's Cross–Motion

██ The final issue is whether the Court has the authority to enjoin the continued prosecution of the class members' claims by arbitration or other means. The parties dispute the effect of the pending California actions. The Court finds compelling Cendant's reliance on *In re Painewebber. See* 1996 WL 374162 (S.D.N.Y.1996). There the court enforced an injunction against continued prosecution of state court claims included in a class action settlement. *See id.* at *4–5. It also addressed the request of certain plaintiffs to compel arbitration of their claims pursuant to arbitration agreements. *Id.* The court concluded that it had the ability to enjoin arbitration to effectuate the to-be-approved class action settlement. *Id.* at 4 (citing *In re Baldwin–United Corp.*, 770 F.2d 328 (2d Cir.1985) (finding that district court had power to enjoin state court actions to preserve its jurisdiction over a federal class

action)). Because the *Painewebber* plaintiffs seeking arbitration had not opted out within the requisite period, they remained within the jurisdiction of the court supervising settlement, and their request to arbitrate could be and was denied.

The Davidsons seek shelter under *In re Piper Funds, Inc. Institutional Government Income Portfolio Litig.*, 71 F.3d 298 (8th Cir.1995), ably distinguished by the Southern District's *In re Painewebber. See Painewebber*, 1996 WL 374162, at *5–6 ("a crucial predicate for the Eighth Circuit's decision in that case was that the unwilling class member had made explicit its intention to opt out of the class .... [h]ere, the fifteen [ ] plaintiffs have failed to opt out of the class"). The Davidsons' situation is closer to *Painewebber*'s than *Piper*'s: They did not timely opt out nor did they express any desire, until the eve of settlement, to be excluded from the class. Consequently, a bar to ongoing arbitration is appropriate to implement the proposed settlement now that the Davidsons are deemed class members. *See also In re VMS Securities Litig.*, 21 F.3d 139, 145 (7th Cir.1994) (class action plaintiff's claims "were subject to the class action settlement, and had already been resolved. There was nothing left for the arbitration panel to decide.").

Plaintiffs' assertion that the Court is *res judicata*-barred from hearing this action is meritless. The Central District of California was not presented with the issue before this Court—whether the Davidsons are within the CalPERS settling class. While the Court directed arbitration of claims arising from the 1996 acquisition and 1997 Settlement Agreement, that direction was made under different factual (and procedural) circumstances. As Cendant says, it did not argue that the Davidsons were class members—at most, they were potential members. Obviously, that issue was not before the Central District of California impliedly or actually.

### Conclusion

The Court finds that the Davidsons are within the settling class, and their claims against Cendant Corporation are within this Court's jurisdiction over the CalPERS action. It follows that Cendant's cross-motion to enforce the injunction of continued prosecution of the Davidsons' claims either in arbitration or before the Central District of California is granted because plaintiffs fall within the class and did not timely seek exclusion.